IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SANDRA JEAN CONOWAY,
     Plaintiff,

vs.                               Case No.: 3:17cv673/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 7, 8). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

On March 4, 2014, Plaintiff filed an application for DIB, alleging disability beginning December 12, 2010 (tr. 134).[1]  Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on January 8, 2016, and on February 4, 2016, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (tr. 134–44).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

II.   FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (see tr. 134–44):

(1)    Plaintiff last met the insured status requirements of the Act on December 31, 2015[2];

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on December 18, 2017 (ECF No. 12).  The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is December 12, 2010 (date of alleged onset), through December 31, 2015 (date last insured).

(2)     Plaintiff did not engage in substantial gainful activity during the period from her alleged onset, through her date last insured;

(3)     During the relevant period, Plaintiff had the following severe impairments: inflammatory bowel disease of chronic diarrhea, degenerative disc disease of the cervical and lumbar spine, mild degenerative joint disease of the knees, osteoarthritis, and obesity;

(4)     Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5)     Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she could frequently crouch and climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds, and stoop and crawl.  She could operate a motor vehicle and occasionally be exposed to unprotected heights and moving mechanical parts.  She could frequently be exposed to humidity, wetness, extreme cold, extreme heat, and vibration;

(6)     Plaintiff was able to perform her past relevant work as an assistant manager (retail sales), retail sales clerk, and inspector.  This work did not require the performance of work-related activities precluded by her RFC; and,

(7)     Plaintiff was not under a disability, as defined in the Act, at any time from December 12, 2010, the alleged onset date, through December 31, 2015, the date last insured.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only

when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* <u>Elam v. R.R. Ret. Bd.</u>, 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998); <u>Lewis</u>, 125 F.3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates

against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of

any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY[3]

        A.      Personal and Employment History

---

[3] Unless otherwise noted, the information in this section is derived from the ALJ's opinion (*see* tr. 134–44).

Case No.: 3:17cv673/EMT

At her hearing on January 8, 2016, Plaintiff recounted that she was prompted to file for disability after an incident in 2010 in which she had to attend to her stomach and diarrhea problem while on shift as an assistant manager at a shoe store  (tr. 216). Plaintiff stated that she had to work shifts by herself in this new job, which made the situation more difficult (tr. 216, 221–22).  Plaintiff stated that she had similar problems in previous jobs with her diarrhea, and that nervousness or other emotional issues would exacerbate the problem (tr. 216).  She described her diarrhea as "uncontrolled" at "any time," and stated that it affected her in her job "to the point to where I just couldn't, I couldn't perform" (tr. 217, 219).  Plaintiff testified as to seeking help for mental health issues partly derived from this problem (tr. 219). Plaintiff indicated that previous jobs she had held, such as an inspector for a domestic cleaning crew, might be workable for her because of the availability of bathrooms, although she had reservations because that particular job sometimes involved heavy lifting and vacuuming (tr. 223–24, 237–38).  Plaintiff also testified to having chronic pain in her neck from a herniated disk (tr. 218).  Plaintiff stated she took cortisone shots for her elbows, shoulders, and neck, which would help for a period of time (tr. 227).  Plaintiff noted that in 2014, she was having diarrhea mixed with normal stools, and that in the spring of 2015, she was having diarrhea two to three times per week

(tr. 236–37). Plaintiff stated that, during the general time of the hearing (January 2016), she was faring better, but she cited as a factor that she was no longer working, which reduced her stress about having diarrhea in public (tr. 243–44).

Plaintiff indicated that she is independent in her activities of daily living (tr. 228). She walks her dogs on her twenty-acre property, but "[i]f I have to go to the bathroom, I have to go to the bathroom" (*id*.). She stated she can tend to her grandchildren, who live on her property, but that she has to get her husband to lift them, for instance onto the changing table (tr. 238–39). She stated she can make simple meals and feed her grandchildren (tr. 239). Plaintiff stated that one of her grandchildren is with her every day after school (tr. 242).

As far as leaving the house, Plaintiff stated that her husband goes to the store for her, but she acknowledged she does go to the doctor (tr. 228). She testified that she has tried to go places, but she experiences great difficulties in doing so, even after taking a substantial amount of "Immodium" (tr. 228–29). Plaintiff spoke of a particular day in which she accompanied her eldest son to the barbershop and held his infant while her son got a haircut (tr. 244). After the haircut, which took about thirty minutes, they went to a park so that the infant could play on swings (tr. 243–44). Evidently, she was able to proceed through that day without any problem with diarrhea or any of her other symptoms.

Plaintiff indicated that she could lift ten pounds, but with difficulty (tr. 240). She provided that she could stand for about thirty minutes at a time, and that she usually does not walk or sit for longer than twenty minutes (tr. 241). Plaintiff testified that even on a good day, she could not work an eight-hour job (tr. 247).

B.    Relevant Medical History

In surveying Plaintiff's treatment records, the ALJ recognized Plaintiff's history of chronic diarrhea, neck pain with radiculopathy, herniated disc, and low back pain. As it concerns Plaintiff's diarrhea, the ALJ noted that in December 1993, a barium enema showed very minimal diverticulosis and that extensive testing in 2010 resulted in Plaintiff being provided medication (tr. 141). The ALJ then noted the record to show that in 2011, 2012, and 2013, Plaintiff had few complaints of diarrhea, but that in July of 2014 she visited the Walton County Health Department with complaints of chronic pain, diarrhea, anxiety, and depression, reporting that her diarrhea began in August 1992 and had continued since then. The ALJ further noted Plaintiff's remark that she was applying for disability benefits because of the diarrhea (tr. 141, 979). The ALJ then noted that throughout 2014 and 2015, Plaintiff visited the health department but only with "medical problems that were not disabling"; Plaintiff indicated in November 2014 that "her major reported disability is dealing with

diarrhea" (tr. 141, 963).  In May 2015, Plaintiff was seen by Khalid Moussa, M.D., a gastroenterologist, who, as the ALJ commented, found that Plaintiff's "symptoms were greater than her signs of illness" (tr. 141, 886).  Also noted were the fact that, as reported by Plaintiff, previous medical testing had ruled out Crohn's disease and irritable bowel syndrome (tr. 141, 885).  The ALJ noted that a CT scan of Plaintiff's abdomen and pelvis revealed diverticulosis (tr. 141).

As for Plaintiff's other physical impairments, the ALJ noted the following.  A July 2014 physical examination showed her to have full range of motion in all extremities, good muscle strength, severe crepitus, and general arthritic appearance in the right knee (tr. 141).  Plaintiff also had decreased range of motion in her cervical spine "in all directions with firm endpoints," and her "[s]traight leg raising was negative, bilaterally" (*id*.).  A CT scan showed degenerative changes in the lumbar spine and atherosclerosis, and x-rays of the lumbar spine showed degenerative changes and atherosclerosis, but no compression fracture (tr. 141–42).  An MRI taken of the cervical spine showed mild spinal stenosis at C5–C6, moderate foraminal narrowing bilaterally from a bulging disc and spurs at C5–C6 and at C4–C5, and mild to moderate foraminal narrowing bilaterally at C6–C7 from a bulging disc and spurs (tr. 142).

In making her RFC determination and her ultimate finding of no disability, the ALJ noted the opinion of Sharmishtha Desai, M.D., who completed a physical residual functional capacity assessment on June 25, 2014 (tr. 275–88). Dr. Desai had found that Plaintiff could perform light work with limitations and could perform her past relevant work as actually performed (tr. 142, 287). The ALJ gave Dr. Desai's opinion great weight, finding the opinion to be consistent with the evidence of record, and finding Dr. Desai to have "program knowledge" (tr. 142).

The ALJ gave partial weight to the opinion of Steve Odeh, M.D., who examined Plaintiff in August 2015 and completed a Medical Source Statement of Ability. As the ALJ related, Dr. Odeh opined that Plaintiff could only sit for one hour at a time and for five hours during an eight-hour work day, stand or walk twenty minutes at a time and for two hours during an eight-hour work day, occasionally lift twenty pounds, frequently carry ten pounds, and occasionally climb (tr. 142, 853–56).

As it concerns Plaintiff's mental impairments, chiefly depression and anxiety, the ALJ noted Plaintiff's assertion that she had a nervous breakdown when she realized she could not perform at her job due to her diarrhea problem (tr. 140). Plaintiff reported she receives treatment every three months, usually seeing Diane Little, ARNP. Plaintiff acknowledged that some of her stress was relieved when she

no longer had to worry about having accidents in public while at work (*id*.). The ALJ also noted Plaintiff's reported issues with memory loss and loss of concentration, but she further noted Plaintiff's acknowledgment that, as long as she takes her medicine, she feels that she is in fairly good remission (tr. 137).

The ALJ further noted Plaintiff's lack of limitations in her daily activities. The ALJ stated that, although Plaintiff did report having problems with drowsiness and short-term memory (which she attributed to side effects of her medications), she stated she did not need reminders concerning her medications or her personal needs (tr. 137). Plaintiff also reported that she goes to the store, visits with other family members, and talks on the phone with a friend nearly every day, and does not have problems getting along with family, friends, or neighbors (*id*.). Plaintiff stated that she does not handle stress well (tr. 138), and she quit driving because of her diarrhea and the medication side effects (*id*.). She reported she is able to pay bills and handle financial matters (*id*.).

In finding Plaintiff's mental health impairments to be non-severe, the ALJ indicated her findings were consistent with those of psychological consultants Richard Willens, Psy.D., and David Tessler, Psy.D., who had completed psychiatric review technique assessments for Plaintiff. Both found Plaintiff's mental impairments to not be severe "because she has mild restriction of activities of daily living, mild

difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation, each of extended duration" (tr. 139). Accordingly, the ALJ assigned great weight to these opinions, noting 1) that the opinions were consistent with the evidence of record and 2) both consultants had "program knowledge" (*id*.).

The ALJ also considered the opinion of Julian A. Salinas, Ph.D., who conducted a consultative examination of Plaintiff in August 2015 and completed a Medical Source Statement of Ability to do Work-related Activities (mental). Dr. Salinas determined that Plaintiff had mild limitations in understanding, remembering and carrying out complex instructions and in her ability to make judgments on complex work-related decisions; and moderate limitations in interacting appropriately with the public, supervisors and coworkers, responding appropriately to usual work situations, and to changes in a routine work setting (tr. 138). The ALJ gave "partial weight" to this opinion, remarking that Dr. Salinas met Plaintiff only once and did not have the benefit of access to all the records that the ALJ herself did, records which showed Plaintiff to be in "very good remission of her mental impairments" (tr. 138).

The ALJ then reviewed the opinion of Diane Little, ARNP, who completed a Medical Opinion for Plaintiff in November 2015. ARNP Little opined that Plaintiff had moderate limitations in her activities of daily living, along with repeated episodes

of decompensation, each of extended duration, and marked limitations in social functioning and concentration, persistence, or pace (tr. 138). ARNP Little also found that Plaintiff would be absent from work for more than four days per month because of her impairments or treatment thereof. The ALJ gave this opinion little weight because it was inconsistent with Plaintiff's treatment record, which noted Plaintiff's report that she was doing well and where her treatment providers found her to be in "good remission" (*id.*).

## V.    DISCUSSION [4]

### A.    Credibility Assessment of Plaintiff

Plaintiff contends that the ALJ erroneously evaluated her testimony, specifically in finding it "not entirely credible" as far as it concerns the intensity, persistence, and limiting effects of her symptoms (tr. 141).

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). If the credibility of the claimant's subjective testimony is critical to the decision, the ALJ must either explicitly discredit such testimony or the findings

---

[4] In this section, the court has set Plaintiff's claims in a different order for organizational purposes.

Case No.: 3:17cv673/EMT

must form a clear implication that amounts to a specific discounting of the testimony. *Id.* (citing <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983). It is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible. *See* <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the claimant's impairments affect her daily activities and ability to work. 20 C.F.R. § 404.1529(c).

Plaintiff's claim is essentially that the ALJ based her credibility assessment "largely upon her findings concerning one day in November of 2015 when Ms. Conoway reported that she accompanied her son and grandson to a barbershop and afterward to a park without experiencing diarrhea." That finding was part and parcel of a fuller finding by the ALJ, however. As the ALJ related, Plaintiff acknowledged that some days she does not have diarrhea, and thus the import of the trip to the barber shop and the park on one particular day is that it appears to typify the fact that Plaintiff has enough confidence in her ability to manage her diarrhea that she could go out on such an activity. This notion is further buttressed by the fact that, as pointed out by the ALJ, Plaintiff testified that she was able to perform in most of her previous jobs—that her only problem with the last job she held was that no other employee was

at the store to cover for her should she have a problem with her diarrhea during the course of a shift.  Hence, the ALJ supported her finding with the fact that Plaintiff had worked for more than a decade prior to the job she quit, and nothing in the record demonstrated "that there was a marked change in her situation related to her physical condition" (tr. 142).  Indeed, Plaintiff's argument is not supported by any citation to the record to indicate that any of her conditions worsened over time.

    B.    Medical Source Opinions

    Second, Plaintiff asserts that the ALJ erroneously evaluated the opinion evidence provided by medical sources.  The ALJ may consider various factors when weighing medical opinions, including: (1) the examining relationship; (2) the nature and extent of the relationship; (3) whether the medical source presents relevant evidence to support an opinion; (4) whether an opinion is consistent with the record; and (5) whether or not the doctor is a specialist.  *See* 20 C.F.R. § 404.1527(d)(1)–(6).  Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians.  *See* 20 C.F.R. § 404.1527(d)(1), (2).  With respect to non-examining State agency medical consultants or other program physicians, an ALJ is required to consider their opinions because they "are highly qualified physicians . . . who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(e)(2)(i).  The ALJ may reject any medical opinion if the

evidence supports a contrary finding.  <u>Syrock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir.

1985).  The ALJ should "always consider the medical opinions in [the] case record

together with the rest of the relevant evidence . . . receive[d]."  20 C.F.R.

§ 404.1527(b).

As it concerns Plaintiff's mental health issues, Plaintiff contends that the ALJ

erred by giving little weight to the opinions of Dr. Salinas and ARNP Little, while

giving great weight to the opinions of Dr. Willens and Dr. Tessler.  The ALJ

discounted the former opinions on grounds that they were inconsistent with treatment

notes from the medical record, which indicated that Plaintiff was "in good remission,"

and the ALJ detailed evidence showing Plaintiff's functionality with activities of daily

living (tr. 137–38).  The ALJ also noted that Dr. Salinas' opinion was based upon a

lone examination, while the ALJ had access to more extensive medical records (tr.

138).

Plaintiff appears to contend the opinions of Dr. Willens and Dr. Tessler should

be superceded by those of Dr. Salinas and ARNP Little, whose opinions were

provided later in time.  The court does not agree, and in any event the ALJ indicated

that she evaluated all opinions with regard to the entire record.  Plaintiff also appears

to take issue with the ALJ's statement that Drs. Willens and Dr. Tessler have

"program knowledge."  However, an ALJ may consider as a factor a medical source's

understanding of disability programs and their evidentiary requirements and standards for determining disability, although it should not be the sole consideration.  *See* 20 C.F.R. § 404.1527(e); Downing v. Berryhill, No. CV 16-10321, 2017 WL 2214591, at *2 (E.D.  Mich. Mar. 16, 2017); Williams v. Barnhart, No. CIV. 02-3476 ADM/AJB, 2003 WL 21671665, at *4 (D. Minn. July 15, 2003).  Last, Plaintiff faults the ALJ for seemingly overlooking the fact that Plaintiff was hospitalized in February of 2014 for mental health issues and suicidal ideation.  As Defendant points out, however, Plaintiff admitted that her suicidal ideation was not sincere, and in any event she reported that her medications were effective and her mental status normalized both before and after her brief hospitalization (tr. 807–14).

As for her physical limitations, Plaintiff also questions the veracity of the ALJ's reliance on the opinion of Dr. Desai, while discounting the opinion of Dr. Odeh.  As the ALJ noted, however, medical testing consistently indicated that while Plaintiff had neck and back problems, the problems did not significantly impact her range of motion or the strength in her extremities.  Additionally, the ALJ noted Plaintiff's general involvement in daily living activities and the fact that her medication helped with her symptoms.  Importantly, Plaintiff's work history showed that she was able to perform in her past jobs despite her pain issues, and she did not identify pain as the basis for her decision to quit working in her last job.  Accordingly, the court finds that

the ALJ adequately supported the weight she provided to the medical opinions provided in this case.

C.     Consideration of Impairments

Third, Plaintiff contends that the ALJ did not adequately evaluate the combined impact of her medically determinable impairments.  In particular, Plaintiff argues that the ALJ did not specifically evaluate her degenerative joint disease of the knees, osteoarthritis, and obesity, as well as her non-severe impairments of hypertension, hypothyroidism, hyperlipidemia, anxiety, and depression.  This argument seems to stem from the fact that the ALJ relied on the opinion of Dr. Desai, who based her medical opinion only on the examination of Plaintiff's degenerative disc disease and gastrointestinal disorder.  However, this argument overlooks the fact that the ALJ considered much more than simply the opinion of Dr. Desai, and in fact considered the entire medical record in assessing Plaintiff's RFC.  The ALJ's review included Plaintiff's own testimony as to all her impairments and how they affected her daily living and her work history.

An ALJ's RFC assessment is to be based upon all relevant evidence of a claimant's ability to do work despite her impairments.  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  However, "there is no rigid requirement that the

ALJ specifically refer to every piece of evidence in h[er] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted). Thus, the ALJ should analyze all the evidence and sufficiently address the "obviously probative exhibits" in order for the court to conclude that her decision is rationally supported by substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ need not include in the RFC limitations, restrictions, or opinions which have been properly rejected or are otherwise unsupported by the record. *See* McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987)

As is largely the case with all of Plaintiff's arguments in this case, she attempts to find error in various aspects of the ALJ's assessments but fails to point to evidence or opinion thereon that would have had any material impact on the ALJ's analysis. Plaintiff retains the burden of proof to establish how her impairments restrict her from doing work. 20 C.F.R. § 404.1512(a) & (c) (2011) (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (holding that the claimant

bears the burden of proving her disability and is therefore responsible for producing evidence to support of her claim); Rothfeldt v. Acting Comm'r of the Soc. Sec. Admin., 669 F. App'x 964, 967 (11th Cir. 2016) ("In the third step of the sequential evaluation process, the claimant must provide specific evidence that his impairment meets or medically equals a listed impairment.") (citing Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis added)). Because Plaintiff fails to support her arguments with substantive evidence, her arguments are unavailing.

VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is hereby **ORDERED**:

1.    That the decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

2.    That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.      That the Clerk is directed to close the file.

At Pensacola, Florida this <u>13</u><sup>th</sup> day of February 2019.


/s/ <em>Elizabeth M. Timothy</em>

**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**
